JOURNAL ENTRY and OPINION
Shortly after 6:00 a.m. on May 1, 2000, a young man wearing a grey, hooded sweatshirt entered the Convenient Food Mart at 4701 Store Avenue owned by Ann Gross and proceeded to the back of the store. Minutes later, another young man, wearing a red sweatshirt and a black, nylon mask over his face, and carrying a gun, entered the store. As the man in red demanded money, the man in grey, now with a red bandana covering his nose and mouth, came from the back of the store carrying a bottle of Boone's Farm strawberry daiquiri wine, and lifted the drawers of cash registers to look for cash. Before leaving, the man in grey demanded a pack of Newport cigarettes. The man in grey, who entered the store first, exited the store, followed closely by the young man in red. Both men, it turned out, were under the influence of wet (cigarettes dipped in formaldehyde).
The owner of the store, Ann Gross, followed the young men, who headed west out of the store and then south on West 47th Street. Ms. Gross heard the one in grey yell to the one in red to Step on it. Ms. Gross followed them around the corner and observed them get into a light blue, boxy-type car with a temporary tag affixed to the rear window on the driver's side. The man in the grey sweatshirt entered from the passenger side door; the man in red got in the driver's side.
Ms. Gross had already triggered the holdup alarm and the police arrived soon after. Ms. Gross's employee, Monie Bibbins, called 911 while Ms. Gross followed the two outside. Ms. Gross gave the police a description of the men, their clothing, and the car in which they drove off.
Neither Ms. Gross nor Ms. Bibbins was able to positively identify the defendants from photo arrays, but both identified Marcus Wilson in court.
The man in red, Derile Baskin, who testified at the trial of Wilson, gave the gun to appellant Wilson (later identified as the man wearing grey) and drove toward the highway.
Cleveland police officer Kevin Kelly, while on his regular shift, heard a call for another zone car for a holdup alarm at 4701 Store Avenue. At the time of the call, he was driving on Fulton near Interstate 71 and went closer to the highway in case the suspects attempted to get on the highway. Officer Kelly spotted the described car, including the temporary tag in the rear window on the driver's side. Officer Kelly followed the car on I-71 south. Baskin testified that when he saw the police car and thought about pulling over, Wilson threatened to pop my ass if he stopped the car. The car, identified later to be the same car Ms. Gross observed the two men driving off in, went onto 480 west, got off at the Grayton Road exit, turned around and headed east on 480. Officer Kelly followed the car onto 71 north, where officer Martin Smith joined the chase, and from which the car finally exited at Broadway. Officer Kelly estimates that speeds reached 80 miles per hour. Officer Kelly continued to follow the suspects up Broadway east to Woodland east and, from there, to Kinsman east, finally to Martin Luther King, Jr. Boulevard, where speeds were estimated at around 70 miles per hour. The car then turned onto Miles where officer Kelly hit the car, which spun and hit a fire hydrant in front of an apartment building at 11623 Miles. Officer Smith pulled in front of the suspects' car to prevent it from leaving. Sometime during the chase on the highway, Wilson threw the gun, the gun holster, the red bandana and the nylon mask out of the window.
The two young men were arrested and the car was searched. Officer Kelly found a pack of Newport cigarettes and a bottle of Boone's Farm strawberry daiquiri wine in the front seat of the car. The gun was found after Mr. Baskin took the police to the spot. Mr. Baskin testified that he told them where the gun was because he did not want any kids to find it. Officers Kelly and Smith identified the appellant as the passenger in the car.
Baskin and Wilson were each charged with four counts: aggravated robbery, failure to comply with order-signal, possession of criminal tools, and felonious assault with peace officer specification. Baskin pled guilty to all counts. He testified that he was not threatened in any way to give his statements, nor was he promised anything for his testimony.
Wilson went to trial and was found guilty of aggravated robbery in violation of R.C. 2911.01 and was found not guilty of the remaining three counts. The trial lasted from April 5, 2001 until April 11, 2001. Before trial, the court granted the prosecution's motion in limine to preclude the introduction of anything related to the investigation of possible police misconduct, which allegedly occurred during the arrest of appellant and Baskin. On April 10, 2001, the prosecuting attorney became aware of recorded oral statements made by the two defendants in the course of the above-mentioned investigation into possible police misconduct. The trial prosecutor provided copies of these statements to the court and defense counsel on the morning of April 11, 2001, the last day of trial. The trial prosecutor read portions of the statements,[1] which included the following statement of appellant in response to a question about why the police were chasing them: `Cuz we robbed the store. The court found nothing exculpatory in the statements, treated them as part of the information she had previously excluded from trial because of potential prejudice, and denied defense counsel's motion for acquittal and/or mistrial. The court stated that because the statements have to do with the officer's conduct primarily incident to the arrest, I don't see how having this information beforehand would have assisted in any way the examination of Mr. Baskin when he was on the stand.
Appellant was sentenced to serve five years with credit for time served. Appellant's sole assignment of error states:
 THE STATE'S NON-COMPLIANCE WITH OHIO RULE OF CRIMINAL PROCEDURE 16(B)(1)(a) DEPRIVED THE APPELLANT HIS RIGHT CONFRONTATION [SIC].
Appellant argues that the failure of the prosecution to provide him with the recorded statements of co-defendant Baskin prevented the appellant from properly cross-examining Baskin. Appellant further argues that information in the recorded statements could have provided defense counsel information with which to impeach Baskin's testimony. Finally, appellant argues that this missed opportunity for a full cross-examination was a violation of appellant's Sixth Amendment right to confront his witnesses.
Appellant admits that there was nothing exculpatory in the statements at issue and admits that the prosecution did not willfully withhold this information, but argues that Baskin's statement that he was beaten and abused by the police is fair materials [sic] for cross-examination. Because these statements were made available to defense counsel only after Baskin testified, appellant argues that the trial court erred in not allowing defense counsel to recall Baskin for further cross-examination. I.
Ohio Rule of Criminal Procedure 16 (B)(1)(a) reads in relevant part:
 (a) Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect the copy or photograph any of the following which are * * * within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 (i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof; (ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer[.]
Further, upon violation of the above rule, the court may order the non-complying party to permit discovery, grant a continuance, prohibit the party from introducing such evidence, or make such order as it deems just. Crim.R. 16(E)(3).[2] The Ohio Supreme Court has stated the following with regard to this rule:
 It is readily apparent that under this rule, the trial court is vested with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so at its option. Alternatively, the court may order the noncomplying party to disclose the material, grant a continuance in the case or make such other order as it deems just under the circumstances.
 Accordingly, our inquiry is limited to a determination of whether the trial court's action in this case constituted an abuse of discretion.
State v. Parson (1983), 6 Ohio St.3d 442, 445, citing State v. Weind (1977), 50 Ohio St.2d 224, 235; State v. Edwards (1976), 49 Ohio St.2d 31,42.
We find that the trial court here did not abuse its discretion in preventing defense counsel from recalling Mr. Baskin to further cross-examine him. The analysis to be applied here is found in the Supreme Court's decision in State v. Parson, supra:
 Where, in a criminal trial, the prosecution fails to comply with Crim. R. 16(B)(1)(a)(ii) by informing the accused of an oral statement made by a co-defendant to a law enforcement officer, and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim. R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim. R. 16 (E)(3) by permitting such evidence to be admitted.
Quickly stated, first, as appellant admits, there was no willful violation of Crim.R. 16 by the prosecution. Parson, supra. Second, appellant has not shown how foreknowledge of the statements would have benefitted the defense preparation. Id. Finally, the record does not show that appellant was prejudiced by the court's denial for further cross-examination of the co-defendant. The reasons for these conclusions are set out fully below.
 II.
Again, appellant concedes that there was no willful violation of Crim.R. 16. We, therefore, move to the second and third prongs of the Parson rule.
 III.
Appellant relies on numerous Supreme Court cases in support of his argument that his Sixth Amendment right to confrontation was denied because a full cross-examination was not allowed. (Appellant's Br. 7-8, citing Chambers v. Mississippi (1973), 410 U.S. 284; California v. Green (1970), 399 U.S. 149; Douglas v. Alabama (1965), 380 U.S. 415; Pointer v. Texas (1965), 380 U.S. 400; Mattox v. United States (1895),156 U.S. 237.) Appellant states, [T]he absence of confrontation `calls into question the ultimate integrity of the fact-finding process.' (Appellant Br. at 8, quoting Chambers at 295.)
Appellant's arguments that (1) the statements at issue were fair materials [sic] for cross-examination and that (2) appellant was denied his Sixth Amendment right to confrontation was denied because there was not a full cross-examination, are not well taken for the simple fact that there was no absence of confrontation. Defense counsel did cross-examine Mr. Baskin. Further, defense counsel questioned Mr. Baskin whether he was threatened in any way to give a statement against appellant and whether he had a deal with the prosecutor for his testimony. Defense counsel mentioned a Fox-8 tape of the chase, knew of the internal affairs investigation from which the statements originated, and attempted to ask officer Kelly and detective James Kiefer about the details of the arrest, but was repeatedly prevented from doing so.
Moreover, even without the cross-examination undertaken by defense counsel, appellant has failed to show how foreknowledge of the statements would have helped his defense. Appellant merely argues that the statements were fair materials [sic] for cross-examination. However, `a bald assertion to this effect is insufficient to demonstrate that the trial court committed reversible error.' State v. Johnson (July 24, 1997), Cuyahoga App. No. 71137, quoting State v. Wiles (1991),59 Ohio St.3d 71, 79.
Finally, by granting the prosecution's motion in limine regarding the allegations of police abuse, the court specifically excluded from trial reference to those allegations. The court found that the possible abuse by the police was not relevant to whether appellant had committed the crimes charged. It is worth noting that appellant does not appeal the propriety of the trial court's decision to grant the prosecution's motion in limine. Because reference to the alleged police abuse was excluded from trial, defense counsel would not have been able to use that information to cross-examine Mr. Baskin anyway. Simply put, appellant was not prejudiced by the trial court's denial of further cross-examination of Mr. Baskin.
 IV.
Finally, we must determine whether the record shows that appellant was prejudiced by the trial court's denial of defense counsel's request for further cross-examination of appellant's co-defendant. The applicable rule has been laid out nicely by this court:
 [E]ven were we to find the state wilfully withheld exculpatory matter from the defense, we conclude defendant suffered no prejudice as a result of the withholding. In United States v. Bagley (1985), 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375, the Supreme Court of the United States held that if there was error in failing to disclose material evidence, there must also be a "reasonable probability that, had the evidence been disclosed to the defense the results of the proceedings would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 682; Kyles v. Whitley (1995), 514 U.S. 115 S.Ct. 1555, 131 L.Ed.2d 490; State v. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. The court went on to say the violation of the duty to disclose is not grounds for reversal, unless the defendant is denied a fair trial. Bagley, at 675; State v. Perry, 80 Ohio App.3d at 85.
State v. Soke (1995), 105 Ohio App.3d 226, 248. Here, the record contains nothing that creates a probability sufficient to undermine the credibility of the outcome. Appellant's assignment of error that defense counsel was prevented from properly and fully cross-examining the co-defendant is refuted by the actual cross-examination of that co-defendant. The actual cross-examination explored the issues of threats or deals in exchange for testimony, the very issues appellant argues could have been addressed with the statements at issue. Further, specific mention of the investigation was specifically excluded by the trial court. Finally, defendant here was not denied a fair trial and so reversal is not the proper response of this court. See Soke, supra.
 V.
Because appellant has failed to show that the trial court's denial of defense counsel's request for further cross-examination either that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or that appellant was prejudiced, we find that the trial court did not abuse its discretion and therefore affirm the trial court's ruling.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN JUDGE JAMES D. SWEENEY, P.J., and DIANE KARPINSKI, J., CONCUR.
[1] The statements were read to the court outside the presence of the jury and they were not offered into evidence by the prosecution.
[2] Appellant cites to State v. Bidinost (1994), 71 Ohio St.3d 449 in support of his argument that Crim.R. 16 should be strictly adhered to. Appellant is correct, but whether the rule is strictly adhered to does not change a trial court's responsibility when faced with a violation of Crim.R. 16 nor this court's standard of review. See Bidinost, supra, at 456 (Having determined that the criminal rules of discovery were violated, we must now examine whether the trial court erred in allowing [the witnesss] to testify and Crim.R. 16(E)(3) provides for the regulation of discovery and permits a trial court to exercise discretion in selecting the appropriate sanction for a discovery violation.).