**Randy G. SPENCER, Appellant,**

v.

**Gregg OUVERSON, et al., Respondent.**

**No. WD 60109.**

Missouri Court of Appeals,
Western District.

Submitted Jan. 18, 2002.

June 11, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 22, 2002.

————

Randy G. Spencer, Appellant pro se.

Mark C. Owens, Overland Park, for Respondent.

Before PAUL M. SPINDEN, C.J., P.J., JAMES M. SMART, JR., and LISA WHITE HARDWICK, JJ.

PER CURIAM.

Randy G. Spencer, *pro se*, appeals the judgment entered against him in his claim for unpaid wages. The respondents have not filed responsive briefs with this court. Spencer alleges eight points of error, most of which as related to confusion about whether the trial court conducted a trial on the merits or granted a motion to dismiss. In one point, Spencer alleges that the trial court erred in granting judgment in favor of respondents in that the trial court held the trial in such a manner as to deny him the ability to present evidence in violation of his fundamental rights to appear at trial. The appeal is dismissed.

The facts appearing of record show that in the summer of 1998, Spencer was employed at Boyle's Famous Corned Beef Company and the Window Acquisition Corporation, through a working relationship between those organizations and the Kansas City Community Release Center of the Missouri Department of Corrections. At the time Spencer was hired, he executed a document which authorized his employer to remit to the staff of the Kansas City Community Release Center any paycheck which, for any reason, he was "not personally able to pick up." On August 14, 1994, Spencer escaped, failing to return after work to the Release Center as required. He did not report to work the following Monday, August 17. The Release Center contacted Boyle's, requesting Spencer's last paycheck. On August 21, 1998, a check for $283.36 was issued and was available to be picked up. Spencer contacted Boyle's, requesting the paycheck. Boyle's declined to give Spencer the paycheck because of his status as an escapee. Boyle's transmitted the check to the Release Center. The check was posted to Spencer's account at the Release Center. The Release Center then treated the money as abandoned or forfeited due

to Spencer's status as an escapee. Spencer was subsequently apprehended and remanded to the custody of the Missouri Department of Corrections.

Contending that the respondents had improperly turned his paycheck over to the Release Center, Spencer filed suit in Jackson County. The first action was dismissed without prejudice for failure to prosecute when Spencer was unable to appear for trial due to his incarceration. On November 30, 1999, Spencer filed the instant three count petition that is substantially the same as the previous petition. This petition alleges causes of action for unpaid wages and penalties pursuant to § 290.110 RSMo 1996, a claim that his constitutional rights to due process were violated, and a claim that his constitutional rights to equal protection were violated.

On November 20, 2000, the trial court took up the case. Defendant Ouverson was sworn and testified. Six exhibits were entered into evidence. At the end of the evidence, the trial court stated:

All right, the court finds that the evidence supports the defendant's position. The court finds the issues in the case for defendants and against the plaintiff. It will be ordered and adjudged that the plaintiff take nothing from his petition. Judgment is entered in favor of defendants and against the plaintiff. Costs are assessed in the cost to the plaintiffs.

The trial court signed and issued an order November 28, 2000. The court subsequently entered a *nunc pro tunc* judgment, changing the order into an appealable judgment.[1] This appeal followed.

Spencer alleges on appeal, *inter alia*, that the trial court erred in holding a trial in such a manner that he could not partici-pate or present evidence or testimony which denied him a fair trial on his claim.

### Escape

We have long recognized in Missouri that the "escape rule" often operates to deny the right of appeal to a defendant who escapes justice. *State v. Troupe*, 891 S.W.2d 808, 809 (Mo. banc 1995). This judicially created doctrine first appeared in Missouri in the case of *State v. Carter*, 11 S.W. 979, 98 Mo. 431 (Mo.1889), when the defendant escaped while his appeal was pending. In the hundred plus years following *Carter*, the courts have subsequently advanced other justifications for the escape rule. For example: lessening administrative difficulties caused by the defendant's long absence, *State v. Kearns*, 743 S.W.2d 553, 554 (Mo.App.1987); reducing prejudice to the State in the event of a remand for new trial, *Id.*; discouraging escape and encouraging voluntary surrender, *Id.* at 555; and disallowing a defendant to selectively abide by the decisions of the courts. *State v. Wright*, 763 S.W.2d 167, 169 (Mo.App.1988).

In *Troupe*, the Missouri Supreme Court examined the effect of *Ortega–Rodriguez v. United States*, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993), on Missouri's application of the escape rule. Troupe argued that the appellate courts should not automatically apply the escape rule when the escape occurred prior to sentencing and has no impact on the appellate process, citing *Ortega–Rodriguez*. *Id.* The Court noted that *Ortega–Rodriguez* was decided by the United States Supreme Court as an exercise of its supervisory power over the federal courts and not on

---

1. The defendants had filed a motion to dismiss in the matter, and it appears that the defendants thought they were presenting evidence on their motion to dismiss. Since the trial court purported to adjudicate the merits, and the court regarded the matter as a trial, it was clearly a trial on the merits.

the basis of any constitutional principle. *Id.* at 810. Citing the various justifications for the escape rule, along with the reasoning of *Ortega–Rodriguez,* the Court decided not to depart from Missouri precedent. *Id.* In making its decision, the Court stated:

> A reviewing court may invoke procedural rules to protect the orderly and efficient use of its resources. In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal.

*Id.* at 811. Since *Troupe* was decided, this court has exercised its discretion to apply the escape rule to dismiss appeals. *See, e.g., State v. Surritte,* 35 S.W.3d 873 (Mo. App.2001); *State v. Burk,* 49 S.W.3d 207 (Mo.App.2001). The court has also declined to apply the rule, allowing an appeal to proceed. *State v. Collins,* 42 S.W.3d 736 (Mo.App.2001).

We are not aware of any previous cases applying the escape rule to a civil case, and generally civil cases will not have a direct relationship to an escape from justice. In this case, however, there is a very distinct and direct relationship. It was Spencer's unauthorized escape that gave rise to the issue with his paycheck. Had Spencer not elected to absent himself from the Release Center, Boyle's would not have had any confusion about the paycheck, and the court system would have been spared this litigation. Spencer's decision to flaunt the justice system is the very cause for which he now seeks to avail himself of the justice system. If we will dismiss a criminal appeal because of a party's escape, it certainly would be appropriate to dismiss a civil appeal of this kind when the litigation has been directly caused by an escape in the first place. Moreover, if we will some-

times exercise our discretion to dismiss a civil appeal merely because a party has not complied with a procedural or a briefing rule, it makes sense that we should have discretion to dismiss an appeal when a party has not complied with the requirements of the justice system in so direct a way as to escape from the custody of the Release Center. Therefore, we exercise our discretion to dismiss this appeal. Appeal dismissed.