**Brad RANDOL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 63414.**

Missouri Court of Appeals, Western District.

Sept. 28, 2004.

Andrew A. Schroeder, Kansas City, MO, for appellant.

Deborah Daniels, Jefferson City, MO, for respondent.

Before VICTOR C. HOWARD, P.J., ROBERT G. ULRICH and PATRICIA A. BRECKENRIDGE, JJ.

ROBERT G. ULRICH, Judge.

Brad Randol entered pleas of guilty to two counts of involuntary manslaughter—DWI, a class C felony, section 565.024, RSMo 2000, and was sentenced to two consecutive terms of seven years imprisonment. He was delivered to the Department of Corrections on March 5, 2001, and thereafter filed a timely Rule 24.035 post conviction motion. The motion was denied without an evidentiary hearing by the motion court, and Mr. Randol appeals the court's judgment. In his single point on appeal, Mr. Randol claims that the motion court erred in denying his motion without a hearing because his guilty pleas were not knowingly, intelligently, and voluntarily made. Specifically, Mr. Randol claims that he pleaded guilty to the two involuntary manslaughter charges believing that if he did not plead guilty to the two charges the State would charge him with two counts of felony murder and he would be convicted of the charges if he proceeded to trial.

The State advocates that this court apply the "escape rule" and dismiss Mr. Randol's post conviction motion because he absconded following his guilty pleas and before he was sentenced, remaining a fugitive for five months before he was arrested in Kansas and extradited to Missouri.

The escape rule is applied, and Mr. Randol's appeal is dismissed.

### Facts and Administrative History

Mr. Randol had attended a December party where he had drunk alcoholic beverages. While driving home, he collided with another vehicle at an intersection in Kansas City. The impact caused the deaths of Charles and Cleopatra Maddox. As a result of Mr. Randol's conduct while intoxicated and the resultant deaths, he entered guilty pleas to two counts of manslaughter.

During his pleas of guilty, Mr. Randol stated:

[We] left a Christmas party that was for my fiancé's work, and I had about three margaritas. We was (sic) heading home. It was about 10:15, 10:30, and we approached the intersection at 75th and Ward Parkway, and, I don't know, it was just really bad weather and everything, and I don't know what happened. I guess we just collided with them, and the next thing I know I'm in the ER, and I guess Charles and Cleopatra Maddox was (sic) killed in the accident.

Mr. Randol acknowledged during his plea that the prosecutor's evidence showed he was driving a motor vehicle at about 40 to 45 miles per hour, too fast for the weather conditions that then existed, when he ran a red light at the intersection of 75th street and Ward Parkway and struck the vehicle in which the Maddoxes were riding, killing them. Mr. Randol also acknowledged that his blood alcohol content tested at .11 shortly after the accident. (The speed limit at the scene of the collision was thirty-five miles per hour, established at the sentencing hearing, and the State's evidence at the hearing was that Mr. Randol was driving in excess of 63 miles per hour when the collision occurred.) Mr. Randol granted at the time he entered his pleas of guilty to the charges that the court's authority included sentencing him to a maximum period of incarceration of fourteen years by awarding seven years incarceration for each charge and requiring that the penalties be served consecutively. At the conclusion of the plea hearing, Mr. Randol remained on bail pending sentencing. He failed to appear at the time of sentencing, and the court issued its capias warrant for his arrest. Approximately five months later Mr. Randol was arrested in Kansas, refused to waive his right to an extradition hearing, and was eventually extradited to Missouri. At the subsequent sentencing

hearing, Mr. Randol was sentenced to consecutive terms totaling fourteen years. He filed his post conviction motion that was denied without a hearing, and he appeals from the motion court's judgment denying his motion.

### Application of "Escape Rule"

The State seeks dismissal of Mr. Randol's appeal from the denial of his post conviction motion asserting the "escape rule" as justification. The State asserts its application because Mr. Randol willfully failed to appear at his sentencing hearing as directed in violation of the conditions of his bail. He was arrested in Kansas approximately five months after his scheduled sentencing hearing and was ultimately extradited to Missouri.

■■ The "escape rule" is a term that applies to the denial of appellate and post conviction remedies where an individual voluntarily violates the conditions of bail pending a judicial proceeding and absconds. "The escape rule operates to deny the right of appeal to a defendant who escapes justice." *State v. Troupe,* 891 S.W.2d 808, 809 (Mo. banc 1995). The rule also applies where a defendant who has fled justice seeks post conviction relief. *Id.*

■■ Application of the rule does not violate a defendant's constitutional rights because neither a right to appeal a conviction nor to a state post conviction proceeding exists. *Goeke v. Branch,* 514 U.S. 115, 120, 115 S.Ct. 1275, 1277, 131 L.Ed.2d 152 (1995); *Reuscher v. State,* 887 S.W.2d 588, 590 (Mo. banc 1994), *cert denied,* 514 U.S. 1119, 115 S.Ct. 1982, 131 L.Ed.2d 869 (1995). The rule has been applied in a civil suit filed by a convicted prisoner, *Spencer v. Ouverson,* 98 S.W.3d 69 (Mo.App. W.D.2002)(prisoner sued in civil action for recovery of unpaid wages in work release program), and even in a civil commitment

proceeding. *Ingrassia v. State,* 103 S.W.3d 117 (Mo.App. E.D.2002)(judgment entered on jury verdict finding offender to be sexually violent predator and committing him to custody of mental health director). The Supreme Court discussed the application of the rule in *Troupe:*

> A reviewing court may invoke procedural rules to protect the orderly and efficient use of its resources. In applying the escape rule, the relevant inquiry is whether the escape adversely affects the criminal justice system. If so, dismissing the escapee's appeal is appropriate. This determination is left to the sound discretion of the appellate tribunal.

*Troupe,* 891 S.W.2d at 811.

■■ Mr. Randol failed to appear at the sentencing hearing as directed and absconded. He was a fugitive for more than five months before his arrest and ultimate extradition from Kansas to Missouri. His sentencing was delayed until his capture and return to Missouri. In *Troupe,* the Supreme Court noted that the escape rule discourages escape and encourages voluntary surrender but also asserted that the rule requires a relationship between the escape and prejudice to the justice system. *Id.* at 810. The Court also emphasized that although the escape rule applies to pre-escape allegations of error, the rule should not be applied to dismiss challenges to post-capture errors. *Id.*

In *Troupe,* the defendant appealed both his conviction and the denial of his Rule 29.15 post conviction motion. *Id.* at 808. He fled after being found guilty of the offense charged but prior to sentencing as did Mr. Randol in this case. The Court determined that the defendant's absconding and continued absence for eight months "hindered the administration of justice ... by at least this amount of time" and affected the justice system. The

Court said, "It strains credulity to postulate that such a delay does not have an adverse impact on the criminal justice system and the state's case." *Id.* at 810–11.

Mr. Randol's unlawful departure and absence for more that five months, his residence in another state where he was arrested, and the necessary extradition procedure that he required for his removal to Missouri adversely impacted the criminal justice system. Mr. Randol's Rule 24.035 post conviction motion raises issues relating to his guilty plea, an event that occurred prior to his absconding and makes no claim regarding events post-capture. Therefore, applying the escape rule, Mr. Randol forfeited his right to appeal the denial of his Rule 24.035 post conviction motion.

The notice of appeal is dismissed.

HOWARD, P.J., and BRECKENRIDGE, J., concur.